UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEAN TUSZYNSKI,

                                        Petitioner,

        v.
                                                        9:16-CV-0296 (GLS)

M. SHEAHAN,

                                Respondent.
_____

APPEARANCES:                            OF COUNSEL:

DEAN TUSZYNSKI
Petitioner, Pro Se
11-B-1761
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. ERIC T. SCHNEIDERMAN               MICHELLE ELAINE MAEROV
Attorney for Respondent                 Assistant Attorney General
Office of the Attorney General
120 Broadway
New York, New York 10271

GARY L. SHARPE
Senior United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

        Petitioner Dean Tuszynski filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 on January 1, 2016, in the Western District Court of New York.  Dkt. No. 1,

Petition ("Pet.").[1]  The petition was transferred to the Northern District of New York on March

_____

        [1] The cited page numbers for the petition (Dkt. No. 1), refer to those generated by the court's electronic filing system ("ECF").

11, 2016 (Dkt. No. 5), and respondent was ordered to serve and file an answer to the

petition. Dkt. No. 8.

Petitioner challenges his 2011 judgment of conviction, following a jury trial in

Onondaga County Court, of the crimes of driving while intoxicated, aggravated unlicensed

operation of a motor vehicle in the first degree, and leaving the scene of an incident without

reporting.  Pet. at 1.  Petitioner was sentenced as a persistent felony offender to two

concurrent indeterminate terms of 15 years to life imprisonment.  *Id.*

Petitioner raises the following grounds for habeas relief:

(1)     the jury's finding that petitioner was intoxicated was against the weight of the evidence;

(2)     New York's persistent felony offender statute is unconstitutional;

(3)     the sentence imposed was harsh and severe;

(4)     the grand jury indictment was defective;

(5)     the prosecutor engaged in misconduct by knowingly submitting false testimony by a witness at trial; and

(6)     the trial judge was biased and had a "predetermined decision" of the case.

Pet. at 6-7.

Respondent opposes the petition.  Dkt. No. 10, Response; Dkt. No. 10-1

Respondent's Memorandum of Law ("Resp. Mem."); Dkt. No. 11, State Court Records

("SR"); Dkt. No. 12, Transcripts ("T").[2]

For the reasons that follow, the petition is denied and dismissed.

---

[2] The cited page numbers for the response (Dkt. No. 10), respondent's memorandum of law (Dkt. No. 10-1), and the transcripts (Dkt. No. 12), refer to those generated by the court's electronic filing system.  The "SR" page numbers for the state court records filed at Docket Number 11 appear at the top center of the page.

## II.    RELEVANT BACKGROUND

### A.    The Indictment

On October 14, 2010, an Onondaga County Grand Jury returned an indictment charging petitioner with driving while in an intoxicated condition (as a class D felony), first degree unlicensed operation of a motor vehicle, and leaving the scene of an accident without reporting.  SR at 74-75.  The charges stem from an incident on September 1, 2010, when petitioner drove his vehicle into another car while he was intoxicated, left the scene of the accident, and was found to be driving with a suspended license.  *Id.*

Petitioner was charged with a class D felony for driving while intoxicated based upon three Special Informations submitted with the Indictment.  SR at 76-78.  These Special Informations charged that (1) petitioner's license was suspended, revoked or otherwise withdrawn as of the date of the accident on September 1, 2010; (2) petitioner was previously convicted of driving while intoxicated in the Town of Geddes, New York, on October 18, 2005; and (3) petitioner was previously convicted of driving while intoxicated in the Town of Salina, New York, on October 18, 2005.  SR at 76-78.[3]  Prior to trial, petitioner admitted the truth of the allegations in the Special Informations.  As a result of these admissions, the prosecution was not allowed to introduce evidence of these prior convictions during the trial. T at 14-18.

### B.    The Trial

Petitioner's ex-girlfriend, Candace Van Slyke, testified on behalf of the prosecution. She stated that on the morning of September 1, 2010, she and petitioner began drinking

---

[3] Under New York Law, a driving while intoxicated charge is elevated to a class D felony if the petitioner has had two prior drunk driving convictions in the past ten years.  *See* N.Y. V.T.L. §§ 1192(3), 1193(1)(b),(c).

vodka cocktails with grape juice shortly after breakfast.  T at 177-80.  She then testified that they brought the vodka with them in the car and continued drinking as they ran errands throughout Liverpool, New York.  T at 181-82.

Petitioner and Van Slyke were drinking alcohol as they drove to a paint store and then to Van Slyke's home in Baldwinsville, New York.  T at 181-82.  They continued drinking at Van Slyke's house before driving to a friend's garage to discuss a job.  T at 182-83. According to Van Slyke, they stayed at the friend's garage for approximately fifteen minutes, and continued to drink more vodka cocktails.  T at 183-84.  At around noon, they left the garage and petitioner drove onto Interstate 690 towards the John Glenn Boulevard off-ramp in Liverpool, New York.  T at 184-186.

At the same time, Albert Falchi had just finished playing a round of golf and was also driving on Interstate 690 to meet his golf partner for lunch.  T at 58-60.  According to Falchi's testimony, he noticed another vehicle approaching him very quickly from behind as he neared the off-ramp to John Glenn Boulevard.  Although Falchi tried to slow down to allow the other vehicle to pass, the car sideswiped his vehicle as it drove past.  T at 60.

Instead of pulling over or stopping, petitioner continued driving down the road.  T at 60-61.  However, Falchi followed petitioner, honking his horn in an attempt to get petitioner pull over his vehicle.  T at 61-62.  Falchi observed petitioner's car weaving in and out of traffic and going off the side of the road.  *Id.*

Eventually, petitioner pulled over, and both drivers exited their vehicles and began arguing. T at 62.  According to Falchi, petitioner admitted that he was driving too fast and had hit Falchi's car.  T at 63.  However, when Falchi told petitioner he was going to call the police and they should exchange insurance information, petitioner got back into his vehicle and

4

sped away.  T at 63-64.  Falchi then called 911 and provided the license plate number and description of the vehicle to the operator.  T at 64-65.  The license plate number was then traced to a vehicle owned by petitioner's mother.  T at 87.

Liverpool Police Officer Sean Pierce stopped petitioner shortly after the 911 call was placed.  T at 97-100.  According to Officer Pierce, when he asked petitioner if he knew why he was being pulled over, petitioner responded that he "bumped that guy and he was an ass."  T at 101.  Petitioner first denied drinking to Officer Pierce, but then stated that he had a couple beers.  *Id.*  Officer Pierce testified that he could smell the alcohol from the car, and observed that petitioner had bloodshot eyes, slurred speech and that his face was flushed.  T at 101-02.

Officer Pierce asked petitioner to exit the vehicle, and noticed petitioner stumble as he headed to the back bumper of his car.  T at 103-04.  Petitioner proceeded to fail or refuse to complete various field sobriety tests.  T at 104-07.  Officer Pierce testified that petitioner started to show signs of aggression.   T at 107-08.  At that point, Officer Pierce determined that petitioner was intoxicated and placed him under arrest.  T at 108.

Petitioner became belligerent and continued yelling for the next twenty to twenty-five minutes while he was in the back of the police vehicle.  T at 110-113.  Once at the police station, petitioner was read his *Miranda* rights and, according to Officer Pierce, was asked three separate times whether he would submit to a Breathalyzer test.  T at 116-22.  Petitioner refused each time, despite the police warning that his refusal would result in the immediate suspension and revocation of his driver's license.  *Id.*

An inventory search of petitioner's vehicle recovered several alcoholic beverage containers.  T at 208-11.  Petitioner's fingerprint was discovered on the juice bottle and his

DNA was found in a DNA mixture in a beer can.  T at 236, 255-56.

The jury returned a verdict finding petitioner guilty of all the charges in the indictment. T at 416-17.

### C.      Sentencing and Appeal

Before sentencing, the prosecution filed and served a persistent felony offender (PFO) statement pursuant to New York C.P.L § 400.20 and Penal Law § 70.10.  SR at 150-78.  The prosecution argued petitioner should be found a PFO and subject to the enhanced sentencing statute because he had been convicted upwards of eleven times of driving without a license and/or driving while intoxicated since 1987.  *Id.*  The prosecution attached certified records showing petitioner had four prior felony convictions for driving while intoxicated, and was sentenced each time to a term of imprisonment in excess of one year. SR at 155-66.

Petitioner's counsel filed a motion in opposition.  SR at 179-86.  Although petitioner admitted his lengthy criminal history of drunk driving, he argued he was an alcoholic and would be better served with long-term treatment.  SR at 179-82.  Petitioner also contended that New York's PFO statute was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  SR at 182-84.

County Court held a hearing to determine petitioner's status as a PFO.  T at 420-90. Based on the evidence produced at the hearing, County Court found petitioner had previously been convicted of four felonies and, if his driving convictions from local courts were also considered, the petitioner had ten prior drunk driving convictions and eleven convictions for aggravated unlicensed operation of a motor vehicle.  T at 433-41, 450-59.

6

County Court adjudicated petitioner as a PFO.  T at 458-59, 479-81.  Petitioner was then sentenced to two concurrent terms of fifteen years to life as a PFO for the driving while intoxicated and unlicensed operation charges, and to time-served for leaving the scene of an accident.  T at 489.

Through counsel, petitioner appealed his conviction.  SR 1-26.  The Appellate Division, Fourth Department, affirmed the conviction, and the New York State Court of Appeals denied leave to appeal.  *People v. Tuszynski*, 120 A.D.3d 1568 (4th Dep't 2014), *lv denied* 25 N.Y.3d 954 (2015).

## III.    The AEDPA Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may only grant habeas corpus relief with respect to a claim adjudicated on the merits in state court if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. §§2254(d)(1), (2); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt."  *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no

possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*,    U.S.    , 133 S. Ct. 1990, 1992 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*,    U.S.    , 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, the AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*,    U.S.    , 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779).  A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold."  *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schriro*, 550 U.S. at 473-74 (quoting § 2254(e)(1)).  Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*,    U.S.    , 133 S. Ct. 1088, 1096 (2013).

## IV.   DISCUSSION

### A.   Ground One and Three of the Petition are not cognizable on habeas review.

Petitioner maintains in Ground One of his habeas petition that the jury's finding that he was intoxicated was against the weight of the evidence.  He also argues in Ground Three of the petitioner that his sentence was harsh and excessive.  Pet. at 6-7.  The Court finds these claims are not cognizable on habeas review.

#### 1.   Weight of the evidence

Petitioner raised his weight of the evidence claim on direct appeal.  SR at 11-14.  The Appellate Division rejected the claim on the merits, stating that "'[v]iewing the evidence in a neutral light and weighing the probative value of the conflicting testimony and the conflicting inferences that could be drawn, while deferring to the jurors' ability to observe the witnesses and assess their credibility, aided by the video recording, we find that it was not contrary to the weight of the credible evidence for the jury to find that defendant was intoxicated.'" *Tuszynski*, 120 A.D.3d at 1569 (*quoting People v. Purvis*, 90 A.D.3d 1339 (3d Dep't 2011)).

Petitioner raises the same claim in Ground One of his habeas petition.  Pet. at 6. Petitioner's weight of the evidence claim, however, is grounded in New York's Criminal Procedure Law, Section 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence."  C.P.L. § 470.15(5).  Since weight claims are based on state criminal procedure law, they are not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or

9

a federal law or treaty."); *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *McKinnon v. Sup't Great Meadow Corr. Fac.*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); *Buchanan v. Chappius*, No. 9:15-CV-0407 (LEK), 2016 WL 1049006, at *6 (N.D.N.Y. Mar. 11, 2016) (a petitioner's weight of the evidence claim, grounded in state criminal procedure law, was not cognizable on federal habeas review); *Clairmont v. Smith,* No. 9:12-CV-1022 (GTS/TWD), 2015 WL 5512832 at *18  (N.D.N.Y. Sept. 16, 2015) (The petitioner's claim that the verdict was against the weight of the evidence "states a claim only under state law, [and] is not cognizable on habeas corpus.").  Ground One of the petition is therefore denied and dismissed.

### 2.    The Sentence was Harsh and Excessive

Petitioner maintains his sentence was "harsh and severe" and that this Court should reduce his sentence in the interest of justice.  Pet. at 7.  Petitioner raised this claim on direct appeal.  The Appellate Division rejected petitioner's claim, stating only that "the sentence is not unduly harsh or severe."  *Tuszynski*, 120 A.D.3d at 1569.

Generally, an excessive sentence claim may not be raised as grounds for federal habeas corpus relief if the sentence imposed was within the range prescribed by state law. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *Bellavia v. Fogg*, 613 F.2d 369, 373 (2d Cir. 1979) (setting mandatory sentences is solely the province of state legislature); *Jones v. Artus*, No. 9:13-CV-0768 (JKS), 2016 WL 3248402, at *8 (N.D.N.Y. Jun. 13, 2016)

(excessive sentence claim does not present a federal question subject to habeas review); *Lane v. Graham*, No. 9:14-CV-1261 (JKS), 2016 WL 154111, at *13 (N.D.N.Y. Jan. 12, 2016) (excessive sentence claim does not present a federal question cognizable on habeas review).

Here, petitioner does not dispute that his sentence fell within the state's statutory range for a person adjudicated as a PFO.  As such, his claim that the sentence was harsh and excessive is not cognizable on federal habeas review, and Ground Three of the petition is denied and dismissed.[4]

### B.    Petitioner's Adjudication as a Persistent Felony Offender was not contrary to Supreme Court precedent

In Ground Two of the petition, petitioner maintains that New York's PFO statute improperly "allow[ed] the trial court to increase the maximum sentence that could be imposed upon" him, and was therefore unconstitutional.  Pet. at 7.  On direct appeal, petitioner similarly argued that pursuant to *Apprendi*, New York's PFO statute is unconstitutional because it allows the court to increase a sentence beyond the statutory maximum without submitting to a jury facts which increased the prescribed penalty.  In other words, petitioner contends that the imposition of his enhanced sentence was based on additional factual findings which should have been made by a jury.  SR at 15-20.  The Appellate Division considered the claim on the merits and concluded that "it is well settled that Penal Law § 70.10 and CPL 400.20 are constitutional." *Tuszynski*, 120 A.D.3d at 1569 (*citing People v. Battles*, 16 N.Y.3d 54 (2010); *People v. Quinones*, 12 N.Y.3d 116 (2009)).

---

[4] To the extent petitioner is arguing he was erroneously adjudicated a PFO, that issue is addressed in the following section.

11

This Court finds the Appellate Division decision was neither contrary to, nor an unreasonable application of, *Apprendi* and its progeny.  To be sure, in *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Apprendi*, 530 U.S. at 490.  The Supreme Court in *Apprendi* specifically preserved the exception for prior convictions, thereby "affirm[ing] the constitutionality of the use of recidivism as a judicially determined sentencing factor authorizing an enhanced sentence."  *Portalatin v. Graham*, 624 F.3d 69, 80 (2d Cir. 2010) (en banc), *cert. denied,* 131 S.Ct. 1691 (2011) (internal citations omitted).  By preserving recidivism as a "judicially-found sentencing factor," the Supreme Court recognized the "existence of procedural safeguards embedded in prior criminal proceedings, as well as the lack of dispute or certainty as to the 'fact' of a prior conviction," thereby mitigating the due process and Sixth Amendment concerns implicated by permitting a judge to determine a fact that may increase a sentence beyond the statutory maximum.  *Id.* (*quoting Apprendi*, 530 U.S. at 488).

As relevant here, New York's PFO statute, *see* Penal Law § 70.10; CPL 400.20, is a recidivist sentencing scheme under which a defendant is subject to an enhanced sentence based solely on the existence of two prior felony convictions.  The statute defines a PFO as "a person, other than a persistent violent felony offender . . . who stands convicted of a felony after having previously been convicted of two or more felonies."  NY Penal Law § 70.10(1)(a).

A PFO sentence may only be imposed if:

> based upon the evidence in the record of hearing . . . the court (a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law, and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest.

N.Y. Crim. Proc. Law § 400.20(1).  Only after a trial court first determines that a defendant is a PFO may it exercise its discretion and impose an indeterminate sentence of imprisonment authorized for a class A-I felony, which ranges from a minimum of fifteen years to twenty-five years and a maximum of life in prison.  N.Y. Penal Law §§ 70.10(2); § 70.00(3)(1)(i).

The New York State Court of Appeals has reviewed the PFO statute since *Apprendi,* and found the statute constitutional.  *People v. Battles*, 16 N.Y.3d 54 (2010); *People v. Quinones*, 12 N.Y.3d 116 (2009); *People v. Rivera*, 5 N.Y.3d 61 (2005).  The Court of Appeals has construed the statutory language and held that a finding of recidivism (in the form of two previous felonies) is the only factual predicate a trial court must find in order to impose a PFO sentence.  *see People v. Rivera*, 5 N.Y.3d at 66 ("Under our interpretation of the relevant statutes, defendants are eligible for persistent felony offender sentencing based *solely* on whether they had two prior felony convictions.") (emphasis in original), *cert. denied* 126 S.Ct. 564 (2005).  Only after a defendant is adjudicated a PFO as defined by the statute, may a judge exercise discretion to choose a sentence within the prescribed range. *Id.*

The Second Circuit also upheld the constitutionality of New York's persistent felony offender statute in *Portalatin v. Graham*, stating that federal courts "must presume that the New York Court of Appeals meant what it said: the statutory directive to consider the history and character of the defendant and the nature and circumstances of his crime, is a procedural requirement that is only triggered once a judge is already *authorized* to impose

the class A-I sentence." *Portalatin*, 624 F.3d 69, 90 (2d Cir. 2010) (emphasis in original). Any consideration by the trial judge to facts outside of the two previous convictions "do not implicate the Sixth Amendment, for they [do] not – and could not – lead to a sentence in excess of that *Apprendi* maximum." *Id.* at 91. Such facts simply inform the judge's discretion in selecting the appropriate sentence within the PFO statutory range. *Id.*

Here, the trial court held a hearing to determine whether petitioner should be adjudicated a PFO. The trial court based its decision solely on the evidence introduced at the hearing which demonstrated that petitioner had previously been convicted of four felonies of driving while intoxicated. Additional fact-finding at that point was unnecessary to adjudicate and sentence petitioner as a PFO. Instead, any further history and character facts presented at the sentencing hearing, including the nature and circumstances of petitioner's prior criminal conduct, simply informed the trial court's discretion in crafting an appropriate sentence. Petitioner was adjudicated a PFO and then sentenced to concurrent indeterminate terms of fifteen years to life as the maximum. This sentence was within the prescribed statutory maximum for a PFO, *see* N.Y. Penal Law §§ 70.10(2); § 70.00(3)(1)(i), and therefore was not contrary to, or an unreasonable application of *Apprendi.*

Finally, to the extent petitioner argues the PFO statute unconstitutionally allows the trial court to consider the underlying facts of his previous felony convictions prior to imposing a sentence, this Court notes that the Supreme Court has never revisited the recidivism exception it outlined in *Apprendi*, nor considered New York's PFO statute specifically. Since the Supreme Court has not defined the scope of the recidivism exception, it cannot be said that the trial court unreasonably applied clearly established federal law. *Portalatin*, 624 F.3d

69, 93 ("For the time being, the recidivism exception remains, and the Supreme Court has yet to assess a statute . . . that tethers the authorization for an enhanced sentence solely to findings respecting recidivism. We therefore cannot say that the state courts unreasonably applied clearly established Supreme Court precedent" in finding the PFO statute constitutional).  Ground Two of the habeas petition is therefore denied and dismissed.

### C.    Petitioner's Remaining Claims are Unexhausted and Procedurally Barred

#### 1.    Petitioner's remaining claims were not fairly presented in state court

A federal judge generally may not issue a writ of habeas corpus unless a petitioner has exhausted all remedies available in state court.  28 U.S.C.A. § 2254(b).  This requirement is not satisfied unless each federal claim is "fairly presented" to the state courts. 28 U.S.C. § 2254(b), (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (A petitioner seeking federal habeas relief must raise all claims in state court prior to raising them in the habeas corpus petition, and he must "fairly present" each federal claim in the appropriate state court, "thereby alerting that court to the federal nature of the claim").  This is to ensure that the state is given the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citations omitted).

To satisfy the exhaustion requirement, state prisoners must present their claims to a state's highest court in a petition for discretionary review.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (To exhaust federal claims, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").  Habeas corpus petitioners bear the burden of demonstrating that they have exhausted available state remedies. *Irvis v. Haggat*,

15

No. 9:12-CV-1538 (FJS/TWD), 2015 WL 6737031, at *6 (N.D.N.Y. Nov. 3, 2015) (citing *Colon v. Johnson*, 19 F.Supp.2d 112, 119-120 (S.D.N.Y. 1998)).

Here, petitioner failed to exhaust Grounds Four, Five, and Six of his habeas petition by failing to present these claims to the appropriate state court for review. In fact, petitioner acknowledges in his habeas petition that he did not assert the following claims in state court: (1) the indictment was defective (Ground Four), (2) the prosecution engaged in misconduct by knowingly submitting false testimony at trial (Ground Five), or (3) the trial judge was biased (Ground Six). Pet. at 7. As such, the Court finds these claims unexhausted.

### 2.    Petitioner's remaining claims are procedurally defaulted

Petitioner's remaining claims are also procedurally defaulted because there is no remaining avenue by which he can properly exhaust them in state court. *Aparicio v. Artuz*, 269 F.3d 78, 90-91 (2d Cir. 2001) ("When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile").

The facts supporting petitioner's remaining claims were apparent on the record and should have been raised on direct appeal. However, petitioner can no longer file a direct appeal or leave application to exhaust these claims because a defendant is "entitled to one (and only one) appeal to the Appellate Division" and "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." *Aparicio*, 269 F.3d at 91 (citing CPL § 440.10 (2)(c)); *see Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (holding that "even if no state court had applied section 440.10 (2)(c) to Clark's claim, the district court itself should have done so in the first instance

16

pursuant to the exhaustion requirement for federal habeas.); *Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003) (applying CPL § 440.10 (2)(c) to claims raised for the first time in federal habeas petition).

Procedurally defaulted claims are not subject to habeas review unless a petitioner can show cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("Actual innocence means factual innocence, not mere legal insufficiency." (citation omitted)).

To establish cause, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, ___ U.S. ___, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Petitioner has not alleged cause and prejudice for his default, and the Court discerns none. Nor has petitioner raised a claim of actual innocence such that failure to review his claims would result in a miscarriage of justice. Accordingly, based on a close review of the habeas petition and finding no basis to excuse petitioner's procedural default, this Court is barred from reviewing petitioner's remaining claims. Grounds Four, Five and Six of the

habeas petition are therefore denied and dismissed.

## V.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED**; and it is further

**ORDERED** that no Certificate of Appealability (COA) shall issue because petitioner

failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C.

§ 2253(c)(2) requires.[5]  Any further request for a Certificate of Appealability must be

addressed to the Court of Appeals, *see* Fed. R. App. P. 22(b); and it is further

**ORDERED** that the Clerk serve copies of this Decision and Order upon the parties in

accordance with the Local Rules.

**IT IS SO ORDERED**.

September 23, 2016
Albany, New York

Gary L. Sharpe
U.S. District Judge

---

[5] *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).